UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMAL SCOTT                                        CIVIL ACTION

VERSUS                                             NO. 14-2262

STATE OF LOUISIANA ET AL.                          SECTION "N" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Jamal Scott, is a prisoner incarcerated in the Jefferson Parish Correctional Center. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 naming as defendants the State of Louisiana, the Jefferson Parish Correctional Center, the 24th Judicial District Court for Jefferson Parish, Sheriff's Deputies Jeffrey Reynolds, David Dalton and Miguel Dukes; and Jefferson Parish Sheriff Newell Normand. In subsequent written submissions expanding upon his claims, Scott also named Sheriff's Deputies Sean Carson and Lt. Cook, Judges Patricia Joyce and Michael Mentz, Assistant District Attorney Shawana McCarthy and State-appointed indigent defender Brad Scott as additional persons who allegedly violated his constitutional rights. Record Doc. Nos. 5-7, 13, 14, 31 and 32. Scott alleges that he was improperly arrested on false criminal charges; that after his arrest he was improperly kept in a cell with another inmate who should have been in the medical unit; that $300.00 was stolen from him upon his arrest; and that his criminal proceedings have been mishandled, resulting in violation of his constitutional rights. He seeks "compensation." Record Doc. No. 1 (Complaint at ¶ V, p. 5).

On February 19, 2015, defendant 24th Judicial District Court filed a motion to dismiss. Record Doc. No. 16. Plaintiff filed a written opposition memorandum. Record Doc. No. 31. On March 12, 2015, I conducted a telephone conference in this matter. Participating were plaintiff pro se; David Sanders and Danny Martiny, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

On the date of the conference, Scott testified that he was then incarcerated in the Jefferson Parish Correctional Center as a pretrial detainee. He stated that his trial was scheduled to begin on March 23, 2015, stemming from his arrest on May 13, 2014, on charges including possession of a dangerous controlled substance -- cocaine –  and a dangerous weapon, together with resisting arrest. He said that he has been held in the Jefferson Parish jail continuously since the date of his arrest.

Scott confirmed that he asserts three kinds of legal claims in this case: (1) He was improperly housed temporarily in the same cell with another inmate who struck him and should have been housed in the medical unit. (2) One of the defendant sheriff's deputies stole $300.00 from him upon his arrest. (3) He was falsely arrested and charged with the criminal offenses filed against him, and the resulting criminal proceedings have been improperly handled, in violation of his constitutional rights.

2

As to his claim that he was improperly housed with another inmate who should have been in the medical unit, Scott testified that on August 9, 2014, an inmate named Jeremy Hinsley, who had "enemies on the tier," was placed in the same two-man cell as Scott. Plaintiff stated that Hinsley "really didn't want to be in that cell." He testified that the deputy who escorted Hinsley had to threaten him with a can of mace to get Hinsley in the cell and that Hinsley had a "verbal altercation" with other inmates on that tier.

Scott testified that Hinsley then showed him a colostomy bag that Hinsley was wearing. "From what I know about a colostomy bag . . . that's a disgrace, and you're storing all kinds of disease, and it's disgusting," he said. Scott stated that within about two hours, during roll call, Hinsley punched Scott in the face for "no apparent reason . . . no reason at all . . . by this guy who should have been in the medical unit." Scott stated that Hinsley's punch was totally unexpected and that he and Hinsley had no prior disagreement or dispute.  Scott testified that he was later told by a deputy that Hinsley told the deputy after the incident that he had punched Scott because Hinsley wanted to "get off that tier" and away from the other inmates with whom he had exchanged words. Scott said he was not seriously injured by the punch, which resulted in a slight "brushburn."[1]

---

[1] Scott's testimony concerning the minor nature of his injury is confirmed by the  "Progress Notes" dated August 9, 2014, contained in his verified medical records, which indicate that he was treated for "a small abrasion" with a non-steroidal triple antibiotic ointment." Record Doc. No. 35.

Scott testified that after this incident, Hinsley was moved to another cell and permanently separated from Scott, after having been housed in the same cell with Scott for only about two hours. Scott alleged that it was a "disgrace" that he was housed at all with another inmate with a colostomy bag, to "have to use the same toilet, the same faucet . . . It's something I feel like [no] human being should have to be exposed to." Scott acknowledged that nothing happened to him as a result of exposure to the colostomy bag during the two hours he was housed together with Hensley, except that Scott smelled "a foul odor."

As to his claim that one of the deputies stole $300.00 that Scott had with him at the time of his arrest, Scott testified that he believed defendant Deputy Reynolds was the officer who took the money. Scott stated that when he was arrested, he was carrying $327.05, which was taken away from him for inventorying when he was booked at the jail, but after he was moved from the holding cell, he saw that only $27.05 had actually been credited to his prison account.  Scott said he noticed that his money was missing when the booking deputy counted it out and showed him only $27.05. "It had to be [Reynolds] or one of the officers," whom he alleged had a personal vendetta against him and took the money, he said. He further stated that none of his criminal case or prison records show any indication that the $300.00 was being held as evidence against him in his criminal case. Scott stated that the missing $300.00 has not shown up as having been deposited in his inmate trust account.

As to his third claim that his arrest was improper, that the criminal charges against him were false, and that his criminal proceedings have been unconstitutionally handled, Scott testified that he was charged with possession of an illegal weapon, a gun, while in possession of a controlled substance. He denied having a gun or cocaine in his possession. He alleged that the detectives violated his rights by falsely making these charges based on the illegally obtained statements of two other persons who falsely implicated him, even though he did not have a gun or cocaine in his possession. He alleged that the setting of his bond and the charges against him were improperly handled, particularly in that he was charged with two separate offenses at two different times, while the amount of his bond was appropriate only as to a single charge. Scott asserted that the illegal use of a weapon charge had since been dismissed, but he still faces trial on the cocaine count and the resisting arrest charge. He alleged that defendant Commissioner Magistrate Joyce had failed at his initial appearance to advise him properly of all charges against him at a single time and that defendant Judge Michael Mentz had violated his rights in subsequent proceedings.

In clarifying what claims he asserts against particular defendants, Scott testified that Reynolds stole his $300.00; that Deputies Reynolds, Dalton, Dukes and Sean Carson all participated in fabricating the criminal charges against him; that three other deputies named in his papers are merely witnesses in the case against whom he makes no claims; that Lt. Cook was responsible for improperly placing the inmate with the colostomy bag

5

in his cell; that the two judges, Magistrate Commissioner Joyce and Judge Mentz, and Assistant District Attorney Shawana McCarthy have violated his constitutional rights in the pending criminal prosecution against him; and that his initially appointed public defender, Brad Scott, has provided him with deficient representation in his criminal case. In summary, Scott stated that the sheriff's deputies had no proper cause or basis to arrest him and that his circumstances have resulted in "painful" emotional distress.

On cross-examination, Scott confirmed that he was in the cell with the other inmate with the colostomy bag for only about two hours. He denied that he was involved in any struggle with Deputy Reynolds when the arrest occurred. He said that he did not actually see Reynolds take his money; he just knows that he had the money in his pocket and that it was missing after Reynolds arrested him. Scott also reiterated that he had no gun in his possession at the time of his arrest, but he conceded that he was carrying a steak knife with a six-inch blade "for his protection" at that time. He alleged that his documents show he was falsely charged with carrying a firearm at the time of his possession of cocaine, not just a dangerous weapon.

## ANALYSIS

### I.   STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80

6

(5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim. 28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the

actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

8

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not."  Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim of violation of his constitutional rights cognizable under Section 1983, even under the broadest reading.[2]

---

[1] The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

II.   EXPOSURE TO INMATE WITH COLOSTOMY BAG

Scott's allegations that he was improperly exposed to another inmate who was wearing a colostomy bag and should have been housed in the jail's medical unit, even for only two hours, implicates two possible obligations of defendants: (1) their responsibility for classification of prisoners within the jail, and (2) their constitutional obligation to protect prisoners from harm.

To whatever extent, if any, that Scott alleges a due process violation resulting from his housing with the other inmate, he fails to state a cognizable Section 1983 claim.  In Jones v. Diamond, 636 F.2d 1364, 1374 (5th Cir. 1981),[3] the en banc Fifth Circuit stated that "pretrial detainees have a due process right to be considered individually to the extent security and space requirements permit."  Significantly, however, the classification of inmates is an administrative function of the prison.  Id. at 1376.  Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).  "Inmates have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983));

---

[3] Overruled on other grounds by Int'l Woodworkers v. Champion Int'l Corp., 790 F.2d 1174 (5th Cir. 1986), aff'd sub. nom. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987).

Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472).

"Classification of inmates in Louisiana is a duty of the [jailer] and an inmate has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, 196 F. App'x 287, 288 (5th Cir. 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

Considering the individualized circumstances of Scott's case, as described in his testimony, it cannot be concluded that housing Scott with another inmate who was wearing a colostomy bag was unconstitutional. Scott's subjective belief that he should not have been housed with the other inmate is conclusory, unsupported and insufficient for the court to conclude that prison officials' discretionary decisions concerning how and where inmates should be housed were unconstitutional. The circumstances described in Scott's testimony do not establish the objective unreasonableness of this particular housing decision. He admittedly suffered no harm as a result of being exposed to a person who was wearing a colostomy bag. In this instance, housing Scott for two hours

with the other inmate cannot be characterized as arbitrary or indiscriminate or as an abuse of the discretion the law assigns to prison officials, with which this court should not interfere.  No violation of Scott's due process or other constitutional rights occurred under these circumstances.

Insofar as Scott's claim in this regard might be construed as an allegation of failure of the defendant deputies to protect him harm, either from the colostomy bag or from being punched by Hinsley, Scott was a pretrial detainee on the date of the stabbing incident on which he bases this claim.  In Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), however, the Fifth Circuit held "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including . . . protection from harm, during their confinement." Id. at 650. Thus, regardless whether the inmate is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate, such as those alleged by Hutchinson in this case.  Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996); Hare, 74 F.3d at 650.  Here, nothing more than episodic acts or omissions of jail officials.  For the following reasons, plaintiff fails to state a claim of violation of his constitutional rights cognizable under Section 1983 in the particular circumstances of this claim.

Prison officials have a duty to protect inmates from harm or violence by other inmates and to take reasonable measures to protect their safety. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Hare, 74 F.3d at 650. The Eighth Amendment standard enunciated in Farmer applies to a prisoner's claim that prison officials failed to protect him from harm inflicted by other inmates. Thus, prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. Farmer, 511 U.S. at 834; Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976); accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976). "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (quotation omitted).

Further, plaintiff must establish that defendants possessed a culpable state of mind. Id. (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). A prison official cannot be held

liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Newton, 133 F.3d at 308.  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003).  If the court finds that one of the components of the test is not met, it need not address the other component.  Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . .  The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (additional citations and footnote omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In this instance, Scott admitted that the only harm he suffered from the colostomy bag was smelling an odor from it. As to Hinsley's punch, Scott's testimony described it as a sudden and unexpected act about which the deputies had no forewarning or other basis of any kind that might have put them on notice of any risk of harm in housing them together. Scott acknowledged that he and Hinsley had no prior disagreements or disputes

that might have put deputies on notice that he presented any risk of harm to Scott. Under these circumstances, Scott has failed to alleged the requisite elements of deliberate indifference and cannot state a cognizable Section 1983 claim for failure to protect hi9m from a known risk of harm.

III.    MISSING/STOLEN MONEY

Scott also alleges that one of the arresting deputies, whom he suspects was defendant Reynolds, stole $300.00 of Scott's money during his arrest. Construed broadly, these allegations may constitute a complaint that Scott was deprived of his property in violation of his due process rights.  However, Scott fails to state a cognizable Section 1983 claim, and his claim must be dismissed, because any such claim under Section 1983 has been specifically barred by the United States Supreme Court.

In deciding whether state action has violated an individual's right to due process, the court must address two questions: "whether the state action has deprived the individual of a protected interest--life, liberty or property," and if so, "whether the state procedures available for challenging the deprivation satisfy the requirements of due process." Augustine v. Doe, 740 F.2d 322, 327 (5th Cir. 1984); accord Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 556 (5th Cir. 1988); Cuellar v. Texas Employment Comm'n, 825 F.2d 930, 934 (5th Cir. 1987).

The United States Supreme Court has ruled that a state actor's random and unauthorized deprivation of a plaintiff's property, whether negligent or intentional, does

not result in a violation of due process rights if the state provides an adequate post-deprivation remedy. Alexander v. Ieyoub, 62 F.3d 709, 712 (5th Cir. 1995) (citing Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); accord Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996).  The Fifth Circuit has recognized that Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property.  Copsey v. Swearingen, 36 F.3d 1336, 1342-43 (5th Cir. 1994); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).

The deprivation of property alleged by Scott in this case, whether negligent or intentional, is precisely the type of "random and unpredictable as well as unauthorized" conduct that warrants application of the Parratt/Hudson doctrine and forecloses plaintiff's Section 1983 suit in federal court.  Alexander, 62 F.3d at 712 (citing Zinermon v. Burch, 494 U.S. 113 (1990)).  Plaintiff's state law remedy for the alleged negligent or intentional deprivation of his property lies in a conversion or other tort suit for damages in state court.  Because plaintiff alleges precisely the type of conduct that warrants application of the Parratt/Hudson doctrine, his complaint fails to state a claim for which relief may be granted pursuant to Section 1983 and must be dismissed.  Plaintiff remains free to pursue his claim concerning his lost money in state court against the state officials who allegedly lost or seized it.

IV.    <u>ARREST AND CRIMINAL PROCEEDINGS</u>

Scott claims that he was falsely arrested and charged and that the criminal proceedings resulting from his arrest have been conducted in ways that have violated his constitutional rights. All such claims must be dismissed at this time under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

In <u>Heck</u>, the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state confinement, which has not been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has <u>not</u> been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

<u>Id.</u> at 486-87 (emphasis in original) (footnote omitted). Although the Supreme Court's decision in <u>Heck</u> concerned a civil action for monetary damages, the United States Court of Appeals for the Fifth Circuit has also applied <u>Heck</u> in cases in which the plaintiff seeks

injunctive relief.  Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998) (en banc) (citing Edwards v. Balisok, 520 U.S. 641, 117 S. Ct. 1584 (1997)).

Plaintiff's claims are clearly connected to the validity of his present confinement. Heck, 512 U.S. at 479 (Convicted prisoner's Section 1983 action for damages barred because it challenged the conduct of state officials who allegedly "'had engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to petitioner's arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'; and caused 'an illegal and unlawful voice identification procedure' to be used at petitioner's trial."); Ruiz v. Hofbauer, 325 F. App'x 427, 431 (6th Cir. 2009), cert. denied, 130 S. Ct. 413 (2009) (Section 1983 claims were barred when convicted inmate alleged that defendants violated his civil rights "to maliciously prosecute plaintiff by tampering with 'Brady exculpatory evidence' and using the prosecutor's office and Michigan State Police to take that evidence and withhold it from plaintiff [sic] during the course of the malicious prosecution."); White v. Fox, 294 F. App'x 955, 958 (5th Cir. 2008) ("If we were to find that prison officials altered and destroyed evidence relevant to the [disciplinary] charges against White, that judgment would necessarily imply the invalidity of his subsequent convictions and sentences on those charges."); Penley v. Collin County, 446 F.3d 572, 573 (5th Cir. 2006) ("To the extent that the district court were to award Penley damages on his claim regarding the

destruction of evidence and the loss of the opportunity for DNA testing, the validity of his conviction would be implicitly questioned.").

Scott testified that he was then a pretrial detainee awaiting trial on various charges with a current trial date of March 23, 2015. His confinement has <u>not</u> been set aside in any of the ways described in <u>Heck</u>. On the contrary, independent research by staff of the undersigned magistrate judge of the state court record in "State of Louisiana v. Jamal Scott," Case Nos. 14-3047 and 14-3094, Division "F" of the 24th Judicial District Court for Jefferson Parish, has established that on March 25, 2015, Scott pled guilty to possession of drug paraphernalia and resisting a police officer and was sentenced to six months concurrent sentences as both convictions, with credit for time served.

Thus, any claims for relief that Scott asserts, challenging his confinement, are barred and must be dismissed under <u>Heck</u>. As the Fifth Circuit has noted, the dismissal of plaintiff's Section 1983 claims is with prejudice to their being asserted again until the <u>Heck</u> conditions are met.  <u>Johnson v. McElveen</u>, 101 F.3d 423, 424 (5th Cir. 1996).

## V.    <u>IMPROPER DEFENDANTS</u>

Scott has named both the 24th Judicial Court for Jefferson Parish and the Jefferson Parish Correctional Center as defendants. Neither of these defendants is a legal entity with the capacity either to sue or to be sued.  Section 1983 claims may be asserted only against "persons" as the statute and case law define that term.  The 24th Judicial District Court and the Jefferson Parish Correctional Center are not entities that can be sued under

Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983.

A state court is not a person for purposes of suit under Section 1983.  Mumford v. Basinski, 105 F.3d 264, 267 (6th Cir. 1997); Harris v. Champion, 51 F.3d 901, 905 (10th Cir. 1995); Clark v. Clark, 984 F.2d 272, 272 (8th Cir. 1993); Ward v. Morris, 895 F. Supp. 116, 117 (N.D. Miss. 1995); Moity v. Louisiana State Bar Ass'n, 414 F. Supp. 180, 182 (E.D. La.), aff'd, 537 F. 2d 1141 (5th Cir. 1976).

A prison or jail are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not "persons" for purposes of suit under Section 1983, as the statute and case law define that term.  Cage v. Kent County Corr. Facility, 113 F.3d 1234, 1997 WL 225647, at *1 (6th Cir. 1997); Johnson v. LCDC Med. Staff, No. 4:09-cv-13, 2009 WL 1256906, at *2 (E.D. Tenn. Apr. 29, 2009); Holifield v. Mobile County Sheriff's Dep't, No. 07-0321-CG-C, 2008 WL 2246961, at *5 (S.D. Ala. May 29, 2008); Cullen v. DuPage County, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Corr. Facility Admin., No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); Sponsler v. Berks County Prison, No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. 1995); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993).

Under these circumstances, all claims against the 24th Judicial District Court and the Jefferson Parish Correctional Center must be dismissed as legally frivolous, and the pending motion to dismiss filed on behalf of the state court, Record Doc. No. 26, should be granted.

VI.   <u>NO SHERIFF'S LIABILITY</u>

Finally, Scott has named Jefferson Parish Sheriff Newell Normand as a defendant, although he has made no allegations that Sheriff Normand has been personally involved in any of the actions about which he complains. Thus, he appears to name the sheriff as a defendant based solely upon his official responsibilities over his deputies and the parish jail facility.

"There is no respondeat superior liability under section 1983." <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996); <u>accord</u> <u>Field v. Corr. Corp. of Am. Inc.</u>, 364 F. App'x 927, 929 (5th Cir. 2010); <u>Cox v. Irby</u>, 281 F. App'x 390, 391 (5th Cir. 2008); <u>Kohler v. Englade</u>, 470 F.3d 1104, 1114-15 (5th Cir. 2006). Thus, the sheriff cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision. <u>Sanders v. English</u>, 950 F.2d 1152, 1160 (5th Cir. 1992); <u>Baskin v. Parker</u>, 602 F.2d 1205, 1208 (5th Cir. 1979); <u>Barksdale v. King</u>, 699 F.2d 744, 746 (5th Cir. 1983).

To hold the sheriff liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the sheriff] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391; Kohler, 470 F.3d at 1115. "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)). In the instant action, plaintiff has failed to establish either that the sheriff was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of the sheriff and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury. Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which the sheriff can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983. Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22;

Mouille, 977 F.2d at 929. No such unconstitutional custom, usage or policy has been alleged in this case.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the pending motion to dismiss, Record Doc. No. 26, be **GRANTED,** and that plaintiff's complaint as a whole be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[4]

New Orleans, Louisiana, this __17th___ day of April, 2015.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.